At this term the judges delivered their opinions, seriatim,, to the following effect: —
Parker, J.
In this case the principal facts are, that the plaintiff in 1793 loaned to the defendant five hundred * dollars on a bottomry contract, on which he was to receive the principal, with three per cent, per month for marine interest, on the return of the vessel to Salem, from the voyage which he had undertaken ; and in case of a loss of the vessel by perils of the seas, or by fire, or the enemies of the United States, the contract was to be void. — The vessel arrived at the Island of Guadaloupe, discharged her cargo, took a return cargo, set sail for Salem, and was captured by a British ship of war, carried into St. Christophers, and there libelled and condemned. On an appeal to the lords commissioners of the admiralty, the decree of condemnation was reversed, and a restoration ordered; but the vessel had perished, or been converted to the use of the captors, so that a restoration could not be had. But under the treaty of 1794 full compensation for the vessel and freight, together with interest from the capture, was awarded by the commissioners under that treaty, and the amount thereof has been received by the defendant
An action has since been brought upon the contract, but all these Facts appearing on the pleadings, the plaintiff failed to recover, because the event, upon which the money was to be paid, had not occurred; and the Court felt themselves bound by the rules of law to decide that the subsequent indemnification of the defendant could not give effect to a contract which had been defeated by *300 events, which appeared to be within the stipulations of the parties. That decision was founded upon a necessary adherence to technical rules, and not upon any apprehension that the defence set up to the bond was really meritorious.
An action for money had and received is now brought to recover the proportion, supposed to be due to the plaintiff upon equitable principles, of the money received by the defendant under the award of the commissioners; and the question is, whether any part of that sum ought ex aequo et bona to be paid over to the plaintiff.
Until I heard the very elaborate and learned argument by the defendant’s counsel against the action, I did not * entertain a doubt upon this question. It appeared so clear that a part of the money received by the defendant was a compensation for the five hundred dollars, for which his vessel was pledged to the plaintiff, that I had no suspicion he would await a suit at law before he paid the money.
After a careful review of that argument, I remain of the same opinion ; although I confess that some of the points, on which I formerly placed it, have been shaken. I do not know but it is proved by the argument, that the doctrine of average and salvage, as applicable to bottomry contracts, instead of being the general maritime law, is the law of particular commercial countries; but on this point I give no decided opinion, because the present case does not require it.
Neither should I like to attempt a refutation of the argument against the apportionment of contracts. This might be a difficult task, and may be avoided in discussing the case before us. That a party, having a meritorious claim on another, secured by a sealed contract, which he cannot enforce for want of compliance with some stipulation, may nevertheless obtain what is justly due to him in another form of action, is settled by the case of Luke vs. Lyde. which has never been overruled in England, and has been frequently relied on as law in this country. Even in the case of Cook vs. Jennings, where the party failed to recover upon the charter party, because he had not done what by his contract he had undertaken to do, it is strongly intimated by the court, that he might obtain justice in an action of assumpsit upon the implied promise of the freighter to pay for the hire of his vessel pro rata iiineris. It is enough to satisfy the nicety of technical rules, that a party seeking a remedy upon an express contract shall be held to show that he has performed the stipulation, which entitles him to be paid. At the same time it is happy that the law is liberal enough to provide that the man, who voluntarily receives part of a benefit which he had secured by a contract, should be considered as *301 * making a new contract to pay for the part which he so consents to receive.
But I do not know that it is necessary to establish even this principle, in order to maintain the present action. The broad basis of an action for money had and received is, that one man has actually received money belonging to another, or which, by the rules of common honesty, he ought to pay over to the other. The vessel of the defendant sailed to the West Indies, pledged to the plaintiff for the sum of five hundred dollars, and the interest which accrued thereon. At the time of the capture the plaintiff had an interest in the vessel to that amount, and the defendant’s interest was less than the whole value by the same amount.
Had the vessel continued alive, and returned to Salem, or in any event except an actual loss of the vessel, the defendant would not have been restored to his ownership of the whole, without paying to the plaintiff the sum loaned and interest; because the plaintiff had a lien upon her, irrevocable but by payment of the money. This lien would have followed her into whose hands soever she should have gone with the consent of the defendant; and when the decree of restoration passed, had the vessel been in being, the plaintiff’s interest would have continued, and was defeasible only by the payment of the money for which it was pledged ; and in such an event I do not see but marine interest would have been recoverable to the time of her actual arrival at Salem, her port of discharge.
Under these circumstances, when the two governments provided by treaty that all parties, who had suffered by the unjust captures made by the British, should be made whole, whatever was their interest, or in whatever form it existed, can it be doubted that the plaintiff was a suffering party within the meaning of the treaty ? — What prevented him from receiving the money upon his bond? Certainly the capture by the British. — Who destroyed his pledge for the loan ? Certainly the British. — It was therefore proper * that he should be indemnified ; and the only question is, whether they have not intended to indemnify him.
Now, the whole value of the vessel has been paid for, as also hei freight, and interest from the capture. This payment has been nominally awarded to the defendant; but it was substantially for the use of the plaintiff, and the former, in receiving it, was the agent of the latter. This principle was determined in the case of Heard vs. Bradford, (57) in which it was declared by the court, that whoever had a legal interest in the property, the loss of which was *302 compensated by the award, should be entitled to his proportion, in an action against the person in whose favor the award was nominally made. I consider that case as deciding every important question in this.
Upon the whole, I cannot see any fair principle, upon which a man, who has borrowed money upon the pledge of his vessel, the payment depending upon a contingency, the happening of which is prevented by a third party, who, having destroyed the pledge, afterwards makes complete satisfaction for it in money, besides paying him damages for detention, can refuse to repay the money he so borrowed. I acquit, however, the defendant of any unfair intentions, because the zeal of the argument in favor of the principle-, and the labor bestowed on it, shows a settled opinion of his counsel in his favor.
Sewall, J.
The principal question arising in the case agreed by the parties is novel; and, as I apprehend it, the circumstances, upon which the decision depends, are singular and unprecedented.
When the same parties were before this Court, in an action brought by the plaintiff upon the defendant’s bond, the facts now appearing in their agreed statement were then set forth and averred in special pleadings, closed by an issue in law. In that action judgment was entered for the defendant by the decision of a majority of the justices now present, who sat in that cause. Their opinion was that the repayment of the loan had been risked upon the * performance of the voyage specified in the defendant’s bond, which had been finally defeated by the capture and loss of his vessel, and that this discharge from the loan was conclusive in an action upon the bond.
A supposed right of salvage, implied and to be understood in a bottomry bond, and in a contract for a loan upon a marine risk, was then adverted to, and argued for the plaintiff. But the question, arising in that view of the case, was not determined; it being .the opinion of the justices who concurred in the decision, that a demand of salvage, not provided for in the condition of the bond, was not recoverable in an action upon the original contract. And to fortify the decision in this respect, some notice was taken of the course of proceedings in France, where a right of salvage is very explicitly secured to the lender of money upon contract a la grosse avanture, including contracts of bottomry and respondentia. When the loan terminates by a misfortune, which excuses the borrower from a repayment, he is also discharged from any personal liability upon the original contract; and where effects, saved from the loss which determines the risk, have come to his hands, he is liable in another form of action.
*303 In the case at bar, as it is now presented, the principal circumstance to be considered is the compensation awarded and paid to the defendant for the loss of his vessel and voyage. The plaintiff had a share and concern in the voyage defeated and lost, and sustained an actual loss and damage to the amount of his loan.—Has he any interest or property in the compensation, accruing to him either by the operation of the original contract, as a salvage accrues to an insurer after payment of a loss upon a policy of insurance ? or by virtue of the provision in the treaty of London, under which the defendant obtained his award ?
If the plaintiff is entitled, the present form of action is suitable to the case ; for on either ground his interest and property in the sums paid, for the damages sustained by the loss of the vessel and voyage, is money received to his * use, which the defendant cannot justly retain. Nor, as I conceive, is the demand now pursued against the defendant, in any sense, an apportionment of the original contract. If maintained against him, it is because money has come to his hands belonging to the plaintiff, by a title, which he derives indeed from the original contract and loan, and the events which determined it. But the defendant’s liability in this action does not depend upon the circumstance, that he was a party to the former contract; but he is liable, as any other person would be, who holds money which he is not entitled to retain, and which belongs to the party demanding it.
The plaintiff’s demand has been urged upon the ground of aright to salvage, implied in the defendant’s bond by a necessary construction, required by mercantile usages applicable to bottomry and respondentia bonds, and generally to contracts for loans placed by the lenders upon maritime risks. Valin and other foreign jurists have been cited to prove the usages of commercial nations in this respect.
On the other hand, the defendant’s counsel has gone into a very extensive examination of the rules established among the European nations, to prove that contracts of this description have no uniform operation, but are the subjects of very various municipal regulations.
But after all, the question, as it arises between these parties, must be determined in this jurisdiction according to the usages which have been adopted with us, or by the stricter principles of the common law. In this view of the case, the dicta of Lord Mansfield, followed by Lord Kenyon, in the decisions which have been cited, and the total failure of judicial decisions in support of the construction insisted on for the plaintiff, are in a degree con elusive against an allowance in the nature of salvage; especially where the contract for the loan contains no pledge of the vessel *304 For, according to Bynkershoek, who, more than any other foreign jurist, has defined the contract of bottomry, and described its use and * operation, according to its nature and origin, independent of municipal regulations, it is the pledge of the vessel, or other effects upon which the loan is made, and of what may remain of them after any event, by which the personal responsibility of the borrower is excused, from which the right to salvage is inferred. (58) And for myself, I cannot perceive in the contract in question any pledge of the vessel, upon which the loan was placed, nor is there any usage, that I know of, which requires or justifies a construction to-that effect.
Has the plaintiff then any interest, or property, in the compensation awarded and paid to the defendant, under the provisions of the treaty of London usually called Mr. Jay’s treaty ?
It is ascertained by the decree of reversal, that not only the condemnation, but the capture, of the defendant’s vessel and cargo, had been irregular and illegal. By this reversal and the decree of restoration, the capture, as operating, in itself a discharge of the defendant according to the condition of his bond, was annulled. If an actual restoration of the vessel had been practicable, and had been made pursuant to the decree, and her return to Salem after-wards had been prevented by the neglect or voluntary act of the defendant, his liability for the loan would have revived and continued upon his bond, according to its legal construction and operation ; and the capture alone, thus avoided, would have afforded him no defence against the plaintiff’s demand. (59) It may deserve notice, too, that thus far the rights of the parties are determined and preserved by general principles of national and municipal law ; the treaty having the operation only, if that was required in any case, of opening or renewing the remedy by appeal. But an actual restoration, in consequence of a decree of reversal, had become impracticable at the time of the treaty, or was supposed so to be ; and from various circumstances belonging to the cases intended to be provided for, an adequate compensation was not then to be had, by the * ordinary course of judicial proceedings, for losses and damages sustained. And here the treaty interposes, with an especial and extraordinary redress, and a declared intention to compensate losses and damages sustained by reason of irregular and illegal captures and condemnations, with the exception only of losses by the acts or omissions of the claimants.
For whom, then, was this provision made ? To whom was this *305 redress of injuries, and compensation for losses and damages sustained, appointed ? For my part, I can discover no reason for stopping the course of this provision, and preventing it from reaching those who incurred a loss, arising entirely from the inability of the British government to effect a restoration of a vessel illegally captured and condemned.
In his necessity for this provision, and for the extensive operation proposed to be given it, the plaintiff’s case is distinguishable in some degree from other cases, which have undoubtedly occurred. Take the case of an award to the owner of a vessel illegally captured and condemned, made in his name and paid to him, who before the treaty had received from his insurers, in a policy of insurance upon the same vessel and voyage, the amount of their subscriptions as for a total loss. — According to their concern in the loss compensated, they would be entitled in the sums paid to the insured upon the award, recoverable as money paid to their use.
It may be said, that their title would be, either an express abandonment to them when the loss was adjusted, or that right to salvage, which is implied and understood between the parties to a contract of insurance in the most usual form.
To come nearer, then, to the present case, suppose the insurance to have been against a total loss only, without benefit of salvage. The insurer would in this last case be entitled either to reclaim his payment upon the policy as a payment by mistake, or to recover the compensation according * to his interest in it, arising from the loss and damage sustained by the insurer, and not the insured, who to that amount had been previously indemnified.^
This Court decided for the plaintiff in the case of Heard, Assignee of Geyer and Son, vs. Bradford, (60) upon this construction of the provision of the seventh article of the treaty of London; and the reasoning of the judge, by whom the opinion was in that case delivered, appears to me to favor the application now proposed, of the provision of the treaty to the benefit of the plaintiff in the case at bar. Bradford had received the amount of an award under the treaty for a vessel illegally captured and condemned, and for his freight. The vessel at the time of the capture was on a voyage for which she had been chartered to Geyer &f Son, and was in their employ. After the capture, they had been induced to pay, and either before the treaty, or before the award, Bradford had received from them the hire or freight of the vessel up to the time of the capture, at the rate agreed by the charter party, notwithstanding *306 the interruption, and although the freight was not payable by the terms of the charter party until the completion of the return voyage. It was thought unnecessary to determine the question made in the argument of the cause, whether the freight, as paid by Geyer &f Son, was then due and recoverable from them ; but as they, by their payment, had actually sustained the loss and damage to the amount of the freight, the award upon that subject was construed to be for their benefit. And it is stated as a general principle, “ that the rights of the parties must depend upon their interests; and that whenever an award was made nominally to one, where the interest was in another, that other would be entitled to the benefit intended.”
It may be objected, — and this seems to be the ground principally -relied on for the defendant,— that the events which defeated his voyage placed in his hands the sum borrowed of the plaintiff, as an indemnity to that amount, justly acquired to himself by the terms of the loan. And this being * conceded and established by the judgment in the former action between these parties, the defendant’s counsel would draw from it this further conclusion — that a compensation for his vessel and cargo, after he had been thus acquitted of the charge and risk undertaken for the plaintiff, is not to be considered as a restoration to the plaintiff, or as a provision for his benefit.
In this, as I think, unreasonable and inequitable inference, I cannot acquiesce. The seventh article of the treaty of London contains a provision for citizens of the United States, who had sustained losses and damages by irregular captures and condemnations. The plaintiff, to the amount of his loan, was one of these; and the defendant, to that amount, is excluded from the description of persons, for whom the provision was made, after an indemnification at the expense of the plaintiff. The plaintiff thereby became a partner in the loss, although not a part owner of the vessel on which the loan was made, or having any lien or pledge to secure the repayment. But the plaintiff’s concern in the loss is sufficient to establish an interest, to the same amount, in the compensation afforded by a public treaty, providing generally for all who had sustained losses, and to be regarded as an act of protection by the national government, by means of an advantageous treaty taking the place, as it may be understood, of letters of marque and reprisal. (61)
It is in this view of the case, that I have come to the conclusion, that the plaintiff is entitled to recover. A stipulation to compensate the sufferers for their losses and damages is accepted by the *307 national government, as a satisfaction for British depredations; so the illegal captures mentioned in the treaty, as complained of by the citizens of the United States, had been called. An award of compensation, in a case of loss by illegal capture, where the plaintiff was a partner in the loss, including in the estimate of it a sum for which at his expense the defendant had been previously indemnified, although made to the defendant, *and paid to him, must be considered as including the plaintiff’s share and concern in the loss compensated, and as directed to his use and benefit, by virtue of the stipulation and public law, un der which the award was obtained.
It may be necessary that the Court should now concur in some rule of estimating the damages recoverable in this novel and unprecedented case. And for myself, as the defendant confesses the receipt of an adequate compensation, to the full value of the vessel, with her freight or estimated earnings for the voyage, defeated by the illegal capture, I am inclined to think the plaintiff entitled to the full amount of his loss ; that is to say, to the sum loaned, and the maritime interest secured by the bond, reckoned to the time of the capture. But that there may be a final decision, I concur with my brother, who concurs with me in rendering a judgment for the plaintiff; that is, to restrict the plaintiff’s loss to the sum originally loaned. To this must be added the amount of interest received by the defendant, according to the terms of the award.
Sedgwick, J.
This case has been very fully and very learnedly argued ; but it is unnecessary, in the view which I have taken of it, to consider the various points which have been made and discussed. The legal merits of the case, in my opinion, lie within a very narrow compass.
Upon the loan of the money which is demanded, a specialty for the repayment of it was given; a bottomry bond, in a penalty to be void upon the happening of two events, which are expressed — 1. Upon the payment of the sum loaned, with the marine interest agreed upon, within twenty days after the safe arrival of the schooner at her port of discharge in this commonwealth.
This event never has taken place ; the schooner has never arrived' at any port in the commonwealth, nor has the money ever been paid. Thus far there can be no pretence that the defendant is discharged on the terms of the contract.
* 2. The other member of the condition is thus expressed; “ or in case the said schooner should be lost through perils of the seas, or by fire, or by enemies of the United States, while she is performing the said voyage or voyages,” then the bond was to be void. The meaning of which undoubtedly is, *308 that if such a loss should occur, the money loaned was not to he repaid.
This was a contract which the parties had a right to make. It was perfectly fair, and is intelligible; and there is no legal or equi- • table reason why it should not be carried into effect. The only question then is, whether such a loss as the parties contemplated has occurred. If it has, the defendant can under no form of action be compelled to make payment. When a lawful contract is formed by parties, their respective rights and duties must depend upon the terms of it.
In the consideration of the former action, I had precisely the same opinion of the merits of it, that I now entertain. I then thought, and I still think, that if the loss contemplated by the parties had not occurred, the plaintiff was entitled to his money. It was, however, then my misfortune to think that no such loss had taken place. But my brethren were of a different opinion; and that opinion is conclusive as well upon me as upon the parties. One of my brethren said, “ I think the facts in the case ” (the same facts which are stated in that now under consideration) “ I think the facts in the case bring it within one of the stipulated cases of loss.” I am satisfied that the taking, as alleged in the plea in bar, is to all intents a capture by the enemies of the United States ; and if it had been so alleged by' the defendant, the facts would have supported his plea.” After stating, the facts, he says, “ Here was a total loss, which discharged the defendant from his bond.” And he states the question, to which his argument applies, to be, “ whether any event, within the condition of the bond, has happened whereby the obligor is discharged from his contract.”
My other brother * was of opinion that the loss sustained was either by enemies of the United States, or by perils of the sea, both which risks were undertaken by the plaintiff.
Both of the judges, then, who determined the former action in favor of the defendant, determined also that the loss had occurred, which, according to the terms of the contract, was to excuse the defendant from payment; and unless they had so determined, I cannot perceive that it was possible for them to have decided as they did. This determination I am now bound to respect, and to be guided by. How, then, stands the case ? The plaintiff loans the defendant a sum of money, and in the contract of loan it is expressly stipulated, that on the happening of a certain event contemplated by the parties, the defendant should not be bound to -make payment. That event has occurred, and is proved by conclusive evidence, as I deem the former judgment to be. In this view I think the plaintiff is not entitled to recover.
*309 Indeed, I know no instance in which a man can claim, on principles of law, a discharge from a contract, according to the stipulations of it, who can be bound on the ground of the contract after-wards ; which is precisely what is claimed in the present case. And if this principle be correct, as I conceive it to be, the effect of the British treaty is not necessary to be considered.
To rectify a mistake, entertained by some of the profession, relative to my opinion in the former action, who supposed that I thought that the bond should have carried marine interest after the seizure of the vessel; I think it proper to observe that I never entertained that opinion. That was a question not necessary to be determined at that time, because, had the plaintiff recovered, the amount would have been a subject of equitable consideration. (a)

 4 Mass. Rep. 336.

 Bynk. Quaest. Pub. lib. 3, c. 16.

 Marshall, 659. Joyce vs. Williamson.

 4 Mass. Rep. 326.

 See 1 Black. Comm. 258, 9

 [Nothing short of a total destruction of the ship will constitute such a loss as to discharge the borrower of money upon bottomry.—Thomson vs. The Royal Ins. Co. 1 M. &. S. 30 —Ed.]