## Manson *vs.* Gardiner, *Adm'r.*

The receipt of money for an outstanding debt, by an administrator, after the lapse of four years from the grant of administration, does not revive any creditor's right of action which had been previously barred.

Where a vessel, on a voyage to *Trinidad,* and back to her port of discharge in the United States, was captured in the year 1797, by the cruisers of the king of Spain, and condemned; and a sum of money was allowed and paid to the owners in 1824, under the Spanish treaty, for the loss of the vessel and freight;—it was held that the receipt of the money, by the owners, did not revive the claim of a seaman for his wages for the homeward voyage, even up to the time of the capture.

THIS was an action for money received by the defendant, as administrator *de bonis non,* of the estate of *William Howard,* to the use of the plaintiff; and also upon an *indebitatus assumpsit* by the defendant, in the same capacity.

The defendant pleaded, *first,* that the cause of action did not accrue to the plaintiff within six years next before the suit.

To this the plaintiff replied that his action was for wages as a mariner on board the brig *Venus,* in the year 1797, on a voyage from *Bath* to the island of *Trinidad,* and thence back to the United States, of which brig the house of *James Davidson* and Company,

Manson *v.* Gardiner, Adm'r.

were owners, and the defendant's intestate *William Howard* was surviving partner of the firm ;—that the brig was captured during the voyage, and condemned by authority of the King of Spain ; so that no freight was earned, and the plaintiff's remedy was suspended ; that by the provisions of the late treaty with Spain, the defendant, in his capacity of administrator, preferred his claim for the wrongful capture and condemnation of the brig, to the commissioners appointed for that purpose ; which was allowed, to the amount of 8000 dollars, and was paid by the United States to the defendant, *July* 1, 1824, for and on account of the detention and condemnation of the brig, and the loss of her freight ;—whereby the plaintiff's claim to his wages revived, and the defendant, in his said capacity, promised to pay.

The defendant rejoined that the brig was not captured on her outward, but on her homeward voyage, and that the plaintiff returned to his home in this State, *Sept.* 10, 1797 ;—that for the portion of his wages accruing for the outward voyage and half the period of her stay at *Trinidad,* the plaintiff's cause of action, if he had any, existed against the owners of the brig on that day, and might have been prosecuted against them at any time within six years next following ; and as to the portion of wages for the rest of the period till her capture, protesting that none were due, he denied that he received of the United States any compensation whatever for or on account of the same, or any money designed or intended by the government to be appropriated by the defendant, in his said capacity, to the use of the plaintiff.

The plaintiff surrejoined that the sum allowed and paid by the government of the United States, was a compensation to the owners of the brig, as well for the loss of freight, as for the wrongful capture and condemnation ; and that the defendant received that sum, so allowed and paid, and still retains it, not administered.

To this surrejoinder there was a general demurrer.

*Secondly,* the defendant pleaded that *William Howard,* his intestate, died *April* 10, 1810 ;—that on the 20th day of *August,* in the same year, *Samuel Howard* was duly appointed administrator on his estate, and gave bonds and published notice thereof, as the

law directs, specially setting forth the proceedings; but that the plaintiff did not commence his action within four years after the acceptance of the trust by the administrator, though he continued in that office during the whole term.

To this the plaintiff replied, stating the nature of his demand, and the capture and condemnation of the brig, as before, whereby his remedy was suspended, and could not be enforced during the life time of *Samuel Howard*, the administrator.

The defendant rejoined, that the brig was captured on her homeward voyage; that for all wages accruing on the outward voyage, the plaintiff might have had his remedy against the owners, on his return to the United States, in *September*, 1797;—and that, as to wages accruing from and after the lapse of half the period of her stay at *Trinidad*, protesting that none were due, the plaintiff did not, at any time within three years, or within the term of four years after the original grant of administration to *Samuel Howard*, file his claim in the Probate office in the county of *Kennebec*, where the administration was granted, to the end that the Judge of Probate might have directed the administrator to retain in his hands sufficient assets to answer the demand at its maturity, according to the statute in that case provided.

The plaintiff surjoined that for the term of four years after the original grant of administration, his claim was suspended by reason of the capture and condemnation of the brig, and did not revive until after the expiration of that period.

To this also the defendant answered by a general demurrer.

*Allen*, in support of the demurrers, insisted that the replication to the second plea was bad, as it neither denied that the term of four years had elapsed, nor did it confess and avoid it. This limitation of suits against administrators is introduced, not merely for their benefit, but for that of heirs and creditors, and it is a peremptory bar. The administrator cannot avoid it, and bind the estate by a new promise. *Parkman v. Osgood* 3. *Greenl.* 17. *Brown v. Anderson* 13. *Mass.* 201. *Thompson v. Brown* 16. *Mass.* 172. *Emerson v. Brown ib.* 429. *Ex parte Allen* 15. *Mass.* 58. *Ex parte Richmond* 2. *Pick.* 567.

## Manson v. Gardiner, Adm'r.

The suspension of the claim did not prevent the plaintiff from filing it in the Probate office ; in which case he might have pursued the remedy given by the statute ; not against the administrator, but against heirs and devisees, to whom the money may have been paid over.

The question probably intended to be presented, does not arise in the case ; since the plaintiff has chosen to sue the defendant in his capacity of administrator. Against him he can have no other remedy than such as existed against the intestate. But as the intestate never received any money for the claim, no action, by the plaintiff's concession, could have been sustained against him ; or, if any ever existed, it is now barred by the statute. The defendant received no money but such as belonged to the estate. Had he preferred a claim for all persons concerned, and received the money as their trustee, the case would have presented a different question. But it is not in that character that he is now sought to be charged.

R. Williams, on the other side. The plaintiff had two remedies for his wages ; and but one of them is lost. The present suit is not an attempt to revive the personal claim against the owners ; but is in the nature of a process in rem. It was suspended on the disappearance of the vessel ; and revived again, and attached itself to the fund which was awarded in the vessel's stead, and which is the vessel itself, as to all substantial purposes of the lien for seamens' wages. The administrator, therefore, received the money in trust for all who were interested in the property it represented ; and he is bound to distribute it accordingly. Appleton v. Crowningshield 8. Mass. 340. Heard v. Bradford 4. Mass. 326. Brooks v. Dorr & als. 2. Mass. 39. Spafford & als. v. Dodge & als. 14. Mass. 66. Hooper v. Perley 11. Mass. 545.

No action lies against the heirs ; for they have received no money. Nor will the Judge of Probate ever require the administrator to distribute to them the money claimed by the plaintiff. It is not a subject of Probate jurisdiction, for it does not belong to the estate. And for the same reason it cannot be retained by the administrator, under Stat. 1821, ch. 52, sec. 27 ; which speaks only of demands created by express contract, which fall due on a day certain, and

---
Manson *v.* Gardiner, Adm'r.
---

this not till after four years from the grant of administration. But here was no treaty in existence when that period expired ; nor any reason for authorizing the administrator to retain the money, nor for requiring the heirs to give bond.

But if the case were one which might, under certain circumstances come within the statute, and give a remedy against heirs; yet that remedy is not matured. For no action lies against an heir, during an open administration. While the administrator officially exists, he represents the estate,' and he alone is responsible. 12. *Mass.* 395. 1. *Dane's Abr.* ch. 29. *art.* 4. *sec.* 12. It was in that capacity that he received the money, and now insists on retaining it ; but it was in trust for the plaintiff, and he is liable *de bonis propriis. White v. Swain* 3. *Pick.* 365. *Moody v. Webster ib.* 424. Or, for the purposes of justice, the intestate may be presumed to have promised that whenever freight should be recovered, he would pay the seamen their wages. 1. *Dane's Abr.* ch. 29. *art.* 17. 2. *Dane's Abr.* ch. 57. *art.* 2.

The opinion of the Court was read at the ensuing *October* term, as drawn up by

MELLEN C. J. Notwithstanding the extent of the pleadings and arguments in this case, upon a careful examination we find that the decision of it depends on plain and well settled principles, some of which appear to have received little consideration from the counsel. When all unimportant facts are laid out of view, those remaining have nothing new or perplexing about them. We will, however, give a brief statement of them all; and the following are the facts appearing upon the face of the pleadings, or, by distinct implication, admitted by them.

In the year 1797, the firm of *James Davidson & Company*, of which *William Howard* the intestate was the surviving partner, were owners of the brig *Venus.* In that year she sailed from *Bath* on a voyage to *Trinidad*, and back to the United States. She was captured on her homeward voyage, and condemned by authority of the King of Spain. The plaintiff was a seaman on board said brig during said voyage, until the time of her capture. Immediately af-

Manson *v.* Gardiner, Adm'r.

ter the capture he returned to *Georgetown*, in this State, in *September* of that year. *Howard* died on the 10th of *April* 1810. On the 20th of *August*, in the same year, *Samuel Howard* was duly appointed administrator on his estate, and then accepted the trust; giving bond and notice of his appointment and qualification, within three months, according to law. The plaintiff did not commence his action for the recovery of the sum now demanded, or any other sum, against the firm, or against *William Howard*, or the administrator, at any time within four years next after his acceptance of the trust; though during all that time, and ever since the capture, there was no legal impediment to such action. The present defendant is the administrator *de bonis non* on the estate of *William Howard;* and on the 1st day of *July* 1824, in that capacity, he received from the government of the United States 8000 dollars for and on account of the capture and condemnation of the brig, and loss of her freight.

As nothing appears to the contrary, we are to consider the estate of *William Howard* as sufficient to pay all debts for which he stood answerable at the time of his decease.

Such being the facts, the plaintiff, since the receipt of the above sum by the defendant, has commenced this action, in which he declares against the defendant on his promise to pay the money by him owed as administrator. The defendant pleads, first, that no cause of action accrued to the plaintiff within six years next before the commencement of the action; and secondly, that no action was commenced against the first administrator, within four years next after his acceptance of his appointment. The subsequent pleadings, disclosing the several facts before stated, terminate in general demurrers to the surrejoinders. The replications to both pleas, and the rejoinders to both replications, are substantially the same, though there is some difference in the surrejoinders, to be noticed hereafter.

As to the first plea in bar;—whatever right of action the plaintiff had for his wages on the outward voyage, accrued to him certainly as early as his return to this State in *Sept.* 1797, where the owners then resided, and where *William Howard* continued to reside until his

death in 1810. On this principle the plaintiff's action was barred by the statute of limitations, as early at least as *October* 1803 ; for no reason is assigned why an action was not commenced within six years after the right of action accrued, and no new ·promise is alleged, or fact disclosed, in the replication, shewing a revival of the right of action. The only circumstance relied on is the receipt of the 8000 dollars by the defendant, in his official capacity, in 1824 ; twenty one years after the statute had attached. Now of what importance is this fact, shewing this addition to the funds in the hands of the administrator, belonging to the creditors or heirs ? There were sufficient funds before in his hands to pay the plaintiff's demand, if any thing was due, and had not been barred by law before any administration was ever granted. The principle contended for would be dangerous and unjust in its operation ; for if adopted, the consequence would be that any payments made to an administrator after a debt was barred by the statute, would at once revive the right of action as effectually as a new promise ;—a consequence which no one can seriously anticipate. In this view of the subject, it is evident that the replication is totally insufficient, and in no respect answers or avoids the plea in bar ; and this being the first fault, it is unnecessary to examine the merits of the rejoinder or surrejoinder. The plea being good, bars this action against the defendant as administrator.

As to the second plea in bar ;—here again it appears that the plaintiff's action against the first administrator was barred, because no action was commenced against him within four years next after his appointment, qualification, and giving notice of the same ; and this is a good plea in bar in a suit against the administrator *de bonis non.* *Heard v. Meader, adm'r.* 1. *Greenl.* 156. Does the replication to this plea in any legal manner answer or avoid it ? If any thing, it seems more exceptionable than the replication to the first plea. The plea itself contains matter constituting a good bar to the action against the defendant as administrator. The act relied on by the plaintiff, as obviating the bar, is the receipt of the 8000 dollars. It is contended that by implication it ha this effect. We cannot admit this doctrine ; for when an action is barred by the statute limiting actions against executors and administrators, it is not in the power of

Manson *v.* Gardiner, Adm'r.

an executor or administrator, by his express promise to pay the debt, to revive the action so as by means thereof to render the estate chargeable with its amount. *Dawes v. Shed & al. ex'rs.* 15. *Mass.* 6. That it is a much stronger case than the one under consideration. If this plea can be avoided by such a replication, the same new and strange consequences will follow that we have before noticed; that is to say, the receipt by the administrator, of an outstanding debt, after the expiration of the four years, will at once remove the statute bar, and revive the rights of action in favor of those who, by their negligence, have lost them; and thus, in fact, virtually repeal the wis ' provisions of a salutary statute. The replication being bad, we say nothing of the rejoinder or surrejoinder; but only adjudge the plea a good bar to the plaintiff's action against the defendant in his official capacity. In the view we have thus far taken of the cause, we consider all the facts in relation to the treaty with Spain, and the payment of the sum awarded by the commissioners, into the hands of the defendant as administrator, to be wholly irrelevant; in no degree changing the aspect of the cause in respect to either of the parties.

But as the action is attempted to be supported, not on any promise made by the intestate *William Howard,* but by the defendant himself in consideration of his being indebted as administrator; we will consider the merits of the plaintiff's claim in this point of view. It is not pretended that any express promise was made; the declaration itself shews that an implied promise only is relied on; as it is alleged to have been made in consideration of his having received a sum of money, as stated in one count, and of being indebted, as stated in the other count. Besides, the replication shews most distinctly that the plaintiff rests his cause upon those facts therein stated, from which it is contended that the law raises a promise of payment. Considering the plaintiff's action as founded on the promise of the defendant, and considering that promise as binding on him personally, it would follow of course that neither of the pleas in bar would be good. The first would not be, because the receipt of the 8000 dollars which is relied on as furnishing the right of action, was in 1824; and on this ground the cause of action accrued within

six years before the commencement of the action ; and the second would not be, because it does not profess to bar the action by any limitation protecting him in his private capacity, but only in his character of administrator. In this view of the cause then, the pleas being insufficient, we must go back to the declaration, and examine whether, upon the facts disclosed by the pleadings, that is good and sufficient in law to maintain the action ; and we must look to those pleadings, inasmuch as those facts, which the plaintiff relies on, are not noticed in the declaration, but are spread at large in the replication. In the circumstances of this case, does the law imply a promise, on the part of the defendant, to pay the plaintiff the sum he demands? In answering this question several particulars are to be considered. 1. The plaintiff's claim for his wages on the outward voyage, if ever well founded, was barred and irrecoverable many years before the money was received by the defendant from the United States. He had then no legal rights whatever ; and therefore there is no more ground for implying a promise in favor of the plaintiff than of any other person. 2. The 8000 dollars when received by the defendant, was the property of the heirs of *William Howard*, subject to the existing legal claims of creditors ; and to these heirs and creditors the defendant, as administrator is accountable for the amount ; *White v. Swain* 3. *Pick.* 365 ; and being thus accountable on his administration bond, it would be unjust and unreasonable to imply a promise directly inconsistent with that express obligation, and thus render the defendant twice liable for the same sum. 3. There is no privity between the plaintiff and the defendant. In this respect they are strangers to each other. 4. Neither is there any consideration to raise and support the supposed promise. No benefit has been, or can be received by the defendant for such a promise ; on the contrary, to hold him bound by an implied promise, would subject him to certain injury. Neither has the plaintiff parted with any rights or benefits, which can be deemed a consideration ; and it is surely a well settled principle that there must be a loss on one side, or a benefit on the other, to constitute a consideration. And here we must again repeat the remark, that it would be a species of judicial heresy to decide that a right of action once barred by the

Manson *v.* Gardiner, Adm'r.

general statute of limitations as against a defendant in his capacity of administrator, should by a subsequent receipt of an outstanding debt, be *ipso facto*, revived as against such defendant in his private and personal capacity so as to render him personally liable.

It is true, as the court observe in the case of *Brown & al. v. Anderson & al.* 13. *Mass.* 201, that the general statute of limitations has always been considered as furnishing to debtors *prima facie* evidence of payment; and therefore an acknowledgment of the debt by an executor or administrator, as well as by the original debtor, has been holden to avoid the statute; so, *a fortiori*, has a new promise; but such new promise or acknowledgment must be express and unambiguous. *Perley v. Little* 3. *Greenl.* 97, and cases there cited, and *Bangs v. Hall* 2. *Pick.* 368.

But we may safely go one step further, and say that if the defendant, when he received the 8000 dollars, had expressly promised the plaintiff to pay his demand, it would not avail him in this cause. We have before cited the case of *Dawes v. Shed* to shew that such a promise could not avoid the special statute of limitations, and again bind the estate; and to the same point we again cite the case of *Brown v. Anderson.* Nor would it bind the administrator personally, unless under special circumstances. Thus, in the case of *Scott v. Hancock & al.* 13. *Mass.* 162. *Jackson J.* in delivering the opinion of the court, observes, when speaking of the effect of a promise of an executor or administrator to pay a debt barred by the special statute of limitations of 1791, that if the executrix alone was interested to dispute the claim, her promise to pay it might prevent her from successfully pleading the statute; but he observes, " the heirs, out of whose estate the money is to come, if lawfully recovered by the creditor, have a right to deny that fact; they may also dispute its legal effect and operation; unless the promise has been made in writing and for a valuable consideration, so as to bind the administratrix personally; in which case the estate in their hands would be exonerated." But this idea need not be pursued any further on this occasion, as we have no evidence of any express promise, in writing, or by parol; or of any valuable consideration.

As we have before observed, the defendant, in his official capaci-

Manson *v.* Gardiner, Adm'r.

ty, is answerable for the sum received of the United States; and he must render an account of it in the usual manner to the Judge of Probate, as the defendant was holden to do, in *White v. Swain.* If the estate of *William Howard* had been represented and found to be insolvent, and the plaintiff had duly filed and proved his claim for the wages earned before the commissioners, he might have applied to the Judge of Probate to cite the defendant before him, to render an account of the property received under the treaty; and on his refusal or neglect, he might have commenced an action on the probate bond and thus obtained justice. Or, as the estate of Howard is solvent, he might, within the four years by law allowed him, have commenced his action for such wages, and recovered judgment; and if such judgment had not before been satisfied, he might have availed himself, in such case, of the benefit of the probate bond, according to the provisions of our statute regulating proceedings on probate bonds. But as the plaintiff, by his own negligence, suffered his claim to become barred by law, these are principles and proceedings, in which he now can have no interest or concern. He, long since, voluntarily abandoned whatever demand he could once have asserted against the firm of *James Davidson & Company,* or against *William Howard,* the surviving partner, or against *Samuel Howard,* the first administrator; and nothing has since transpired, which has revived it.

But, according to the argument of the plaintiff's counsel, even if no remedy exists for the recovery of the wages earned on the outward voyage, the claim is well founded in law, for the wages on the homeward voyage, up to the time of the capture of the brig. This leads us to notice the difference between the surrejoinders, to which allusion was made in the former part of this opinion. The first surrejoinder states that the sum awarded by the commissioners, and received by the defendant, was allowed for the wrongful capture, detention and condemnation of the brig, including the loss of her freight. This fact the demurrer admits, and, as has been before stated, the defendant is accountable to the Judge of Probate for the 8000 dollars; it belongs to the heirs at law of the intestate, subject to the payment of those debts which he owed at the time of his de-

Manson *v.* Gardiner, Adm'r.

cease, and which are now existing as *legal* claims against the estate ; and of those only. Such was the debt in the before cited case of *White v. Swain.*

The second surrejoinder avers that the plaintiff's right of action was suspended by reason of the capture and condemnation of the said brig, and did not revive until after the lapse of four years, next following the defendant's appointment as administrator. But it appears that there was no suspension of right as to the sum sued for as wages, as is alleged in the surrejoinder. No claim for wages on the home-ward voyage ever existed, against the firm, or against the intestate, at the time of his decease ; because such wages were never earned ; and they were never earned, because the capture and condemnation prevented it. The award of the commissioners, and their allowance of the 8000 dollars, and the payment of it to the defendant, could not legally create an obligation after the dissolution of the firm by the death of the intestate, or create a right of action against the defendant in favor of a man who had none before ; though it might undoubtedly operate legally by way of indemnification to those whose pre-existing rights had been violated by the capture and condemnation, and which rights remained unimpaired at the time of the award and payment. There is a clear distinction between the two cases, which requires the application of different principles. On this point the counsel for the plaintiff has cited the cases of *Heard* assignee of *Geyer & son v. Bradford* 4 *Mass.* 324, and *Appleton v. Crownin-shield* 8 *Mass.* 340, as decided on principles which will sustain the present action. We apprehend they differ from it in some essential particulars. In the former case *Geyer & son* had chartered a vessel of the defendant ; on her voyage she was captured by admiral *Jarvis ;* and upon demand made on them by the defendant, *Geyer & son* paid him the stipulated hire up to the time of the capture. Afterwards the commissioners under Mr. *Jay's* treaty awarded to the defendant the sum of 1500 dollars for the freight of the vessel ; being the same amount which *Geyer & son* had paid him. The action was brought for the first instalment of the sum which the defendant had received, and it was sustained. The court observed that the defendant was not entitled to both sums on the same account. It will be observed that the defendant was a party to the

original transaction, and the man who had himself received the money; and having received it twice over, there was no justice in his retaining more than one satisfaction. This was the ground and spirit of the decision. The defendant might well be considered as having received the instalment as the agent and for the use of *Geyer & son*, because it was allowed for the benefit of those whose rights had been invaded, and *Geyer & son* came within that description; and because the defendant had received of them a complete satisfaction for the hire of the vessel, which the award was intended to satisfy. Or it may be considered that the receipt of the sum awarded, implied a promise to repay to *Geyer & son*, what they had paid him.

In the case of *Appleton v. Crowninshield*, the facts were shortly these. *Appleton* loaned a sum of money to *Crowninshield*, upon a bottomry bond on the schooner *Charming Sally*. The bond was conditioned for the payment of the sum borrowed and interest, within twenty days after her return to *Salem*, or a port of discharge in the United States; and that if the schooner should be lost by the perils of the sea, or by fire, or the enemies of the United States, while performing her voyage, the bond was to be void.

The vessel never did return to any port in the United States, but was captured by the British and condemned; but on appeal the decree of condemnation was reversed and restoration ordered; but, for some reason, she was never restored. The commissioners, under the treaty of 1794, awarded to the defendant full compensation for the vessel and freight; and the amount had been paid to him. The action was brought to recover this sum; and a majority of the court sustained it. An action had been previously brought on the bond, but as the schooner never arrived according to the condition, judgment was rendered against the plaintiff. Here again we find that the parties to the original contract were the parties in the suit; and the defendant himself had received the sum awarded, in his own right, and in that right claimed it. One of the justices who argued in sustaining the action seems to have grounded his opinion in a good measure on the principle that the plaintiff had an interest in the vessel at the time of the capture, to the amount of the bottomry bond.

Manson *v.* Gardiner, Adm'r.

because he had advanced that sum on loan to the defendant. It was a vested interest, subject however to be defeated and destroyed by certain subsequent events and conditions; and having been destroyed, the same amount of interest was considered as vesting in the plaintiff, in the compensation allowed by the commissioners. The other justice was of the same opinion as to the appropriation to the plaintiff's use of a proportion of the sum awarded to the defendant; and though he admitted that the " plaintiff's title was derived from the original contract and loan, and the events which determined it," yet he goes on to observe that " the defendant's liability in this action does not depend upon the circumstance that he was a party to the former contract; but he is liable, as any other person would be, who holds money which he is not entitled to retain, and which belongs to the party demanding it." He speaks of the plaintiff as " a partner in the loss," and of course that the compensation awarded must be considered " as including the plaintiff's share and concern in the loss." It would seem that by the terms " partner in the loss" the learned judge must have intended a vested right at the time of the capture, subject to be defeated and destroyed. Viewing the decision, however, as it stands, and without suggesting a doubt as to its soundness and accuracy, we apprehend that the case at bar presents a question, to which the principles of the two foregoing cases do not apply;—a question different in its nature from those we have been examining, and which has been so considered in several decided cases. When the brig was captured, the plaintiff, it is admitted, had earned and was entitled to his wages on the outward voyage, and during half the time the brig was in port; and those wages he has lost, by the operation of the statutes of limitation, as we have before stated. But as to any other or further sum, he had no claim whatever at the time of the capture. If there had been no capture, he would not have been entitled to any wages on the homeward voyage, until the arrival of the brig at her port of discharge. The capture, then, did not divest any of the plaintiff's rights, for he had none subject to be divested. The earning of freight was a condition precedent to the vesting of any right to wages on the homeward voyage; and freight was never earned. The wages of a sailor are not pay-

able, if the ship be captured and afterwards ransomed, and them proceed to her port of discharge and deliver her cargo. *Wiggins v. Ingleton,* 2. *Ld. Raym,* 1211. In the case of *The Friends,* 4. *Rob.* 116, the vessel was captured, and a seaman taken out and carried to France; and afterwards the vessel was recaptured, and proceeded to her port of destination. It was held that the seaman was not entitled to his wages, even up to the time of capture. So in the case of *M'Quirk v. Ship Penelope,* 2. *Pet.* 276, it was decided, that the ship having been captured and condemned, the libellant could not recover his wages, though the owner had recovered the freight from the underwriters. The court observed that the seaman was no party to the insurance; nor was the defendant, in the present case, a party to the treaty with Spain. But still, in both cases, a fund was placed in the hands of the defendant, as an equivalent for the freight, and yet the libellant was not allowed any part of it; the capture and condemnation disproving all legal right on his part. But we forbear to pursue the idea any further. In every view of this cause we are all satisfied that the present action cannot be maintained. And though our opinion, as to some of the grounds of defence, is founded on defects in the pleadings anterior to the surrejoinders, yet as these are demurred to, for form's sake we adjudge the surrejoinders insufficient.     *Judgment for the defendant.*