## MILLER et al. v. O'BRIEN.

### (District Court, S. D. New York. February 5, 1891.)

1. SHIPPING—SHIP-OWNER—INTEREST OF IN VESSEL — DAMAGES FOR TORTIOUS DESTRUCTION—BOTTOMRY—WHEN COVERS DAMAGES RECOVERED.

   Unlike insurance moneys, damages recovered from an offending vessel by the owner of a vessel lost in collision are a substitute for the ship, and any such recovery represents the interest of the owner in his vessel. Hence a transfer, under a bottomry bond, of all the owner's interest in the vessel, includes by necessary implication the fund recoverable for her tortious destruction.

2. SAME — BOTTOMRY AND RESPONDENTIA BOND — TOTAL LOSS OF VESSEL IN COLLISION—DAMAGES RECOVERED—LIABILITY OF SHIP-OWNER TO CONTRIBUTE TO PAYMENT OF BOND—CONSTRUCTION.

   A ship was totally lost in collision, but a portion of her cargo, previously transshipped upon another vessel, was saved, and the cargo-owner, under a bottomry and respondentia bond previously given on ship and cargo, including the transshipped cargo, was compelled to pay the entire amount of the bond. The ship-owner afterwards recovered large damages from the colliding vessel for the loss of his ship. *Held*, that a bottomry bond conditioned to be void "upon the utter loss of said vessel" was not wholly avoided; that the damages recovered represented the ship lost; and that the ship-owner was liable to the cargo-owner for his pro rata share of the amount paid on the bottomry bond by the cargo-owner, to be determined upon a proper general average adjustment.

3. BOTTOMRY—LIEN—ATTACHES TO SALVAGE OR PROCEEDS.

   It is a rule of the general maritime law that, if there be any salvage or proceeds of any of the effects covered by a bottomry bond. the bondholder's lien attaches thereto, although the ship be lost. This is virtually a part of the bond by implication, and it is not necessary that the right thereto be expressly reserved in the bond.

In Admiralty. Libel by Brice Alan Miller and others against Edward E. O'Brien for contribution of payment on bottomry bond. Decree for libelants.

Butler, Stillman & Hubbard and Mr. Mynderse, for libelants.
Sidney Chubb, for respondent.

BROWN, District Judge. The above libel was filed against the respondant in personam as owner of the American ship Andrew Johnson, to recover £1,617.4.3, the defendant's alleged pro rata share of certain moneys which the libelants were compelled to pay at Hamburg, Germany, in order to redeem their cargo from a bottomry bond executed by the master at Callao, Peru, on September 15, 1884.

Most of the facts are stated in the decision upon the argument of exceptions to the libel. 35 Fed. 779. It was there held that the bond remained a valid bottomry lien upon the 1,200 tons of nitrates which had been transshipped from the Andrew Johnson to the Mary J. Leslie, and which reached safely the port of Hamburg, although the Andrew Johnson, to whose cargo all the nitrates had formerly belonged, was lost at sea by collision. The exceptions to the libel

were, however, sustained, on the ground that under the acts limiting the liability of ship-owners, the defendant was not further responsible after the total loss of his vessel,—her total loss being alleged in the libel. The loss of the Andrew Johnson resulted, however, from collision with the ship Thirlmere, through the fault of the latter vessel; and the respondent subsequently recovered from the owners of the Thirlmere in England damages for the loss of the Andrew Johnson to the amount of £5,179.13.6, and £858.6.11, for loss of freight; the value of the ship having been fixed at £10,000. These facts were alleged in the amended libel and established by the evidence.

On the arrival of the Leslie at Hamburg, it was agreed between the representatives of the bottomry claimant and the owners of the cargo that in consideration of the delivery and release of the cargo from the bottomry, the owners of the cargo should pay "whatever proportion of the said bottomry and respondentia bond may be found to be legally due from the said cargo; the question to be submitted" to certain legal counsel as arbitrators; and the cargo was thereupon delivered. Its value was upwards of three times the whole amount of the bond; and the arbitrators having subsequently decided that the cargo was legally subject to the lien of the bond, the whole amount of the bond was paid by the libelants, the owners of the cargo. The bond was given for port of refuge expenses and advances at Callao. Upon an average adjustment afterwards made in London, the amount claimed in the libel was computed to be the pro rata amount of the advances chargeable upon the ship and freight; and the above libel was filed for the recovery thereof against the owners as moneys paid for their use.

1. On careful consideration of the further arguments made in behalf of the respondents, I am not persuaded of any error in the former decision, as to the proper construction of the bottomry bond, or in the conclusion that the cargo that arrived at Hamburg on board of the Leslie was bound by the bond, notwithstanding the loss of the Andrew Johnson. Even if the Andrew Johnson had been an "utter loss," within the language of the bond, that portion of her cargo which had been transshipped on board the Leslie, and which arrived safely, was not lost; and that portion was specifically, and by name, hypothecated in the bottomry bond. It seems to me inconceivable that the parties should thus explicitly have embraced this part of the cargo in the bond without intending it to answer for the bottomry loan on safe arrival at Hamburg, even though the Andrew Johnson might perish. The ambiguous phraseology of the bond in using the term "the said vessel" should be so construed as to effectuate the obvious intention of the whole instrument, by making the words "the said vessel" include both vessels,—i. e. by interpreting the singular for the plural, if necessary, "ut res majis valeat quam pereat."

Besides this, however, it is the general maritime rule, as I understand, that if there be any salvage, or any proceeds of any of the effects covered by bottomry, the bondholder's lien attaches thereto, though the ship be lost. Macl. Shipp. (3d Ed.) p. 61; Force v. Insur-

ance Co., 35 Fed. 767, 771, and authorities there cited. In full in-struments of bottomry, like the present, an express clause to that effect is often, perhaps usually, inserted. The Code of Spain, (article 734,) like those of France, Italy, and the Netherlands, provides that "in case of shipwreck the amount chargeable for the repayment of the loan on bottomry is reduced to the product of what is saved, less the expense of salvage." The South American Codes are mainly a reproduction of those of Spain; and that of Peru probably has a similar provision. There is no evidence before me on that point, nor have I that Code at hand. But so general is this provision, and so wholly is it in accord with the nature and object of bottomry, that I cannot help considering it, under the general maritime law, to be virtually a part of the bond by implication, and not necessary to be expressly reserved in the bond. Such is the rule laid down by Emerigon, (Cont. a la Grosse, c. 11, § 22;) and this seems to be approved as the general maritime rule in Insurance Co. v. Gossler, 96 U. S. 645, 652, 653, 655, in which the court, per Clifford, Justice, states the general law as follows:

"Where the bond covers the cargo as well as the vessel, the lender, unless the condition is otherwise, is entitled to be paid even if the ship is lost, if enough of the cargo arrives in safety to pay the bottomry loan; the rule being that a maritime lien of the lender attaches to the entire property covered by the bond, or to all that part of it which arrives at the port of destination in safety."

See Appleton v. Crowninshield, 3 Mass. 464, 8 Mass. 340.

2. It now appears that the respondent has recovered upwards of $30,000 for the loss of the Andrew Johnson, through the negligence of the Thirlmere. These proceeds in the respondent's hands stand as the direct product and representative of the ship; so that the Andrew Johnson, even if the words "the said vessel" be held to refer to her only, has not become an "utter loss" within the condition of the bond, or within the presumed intention of the parties. The limited liability acts, for the same reason, are not available to the owner as a defense, because he must surrender those proceeds as a part of his "interest in the vessel" in order to become entitled to the limitation of liability. Such proceeds have no resemblance to insurance moneys recovered after such a loss; for insurance moneys are held not to stand as a substitute for the ship, because they arise out of an independent, personal contract for indemnity; a contract wholly collateral to the ship, and not constituting any interest in the ship. The City of Norwich, 118 U. S. 468, 494, 6 Sup. Ct. 1150. The damages recovered for the negligent destruction of the ship are precisely opposite. The right of property in the ship, and the right to damages are identical; the latter is founded directly and exclusively upon the former, and is its necessary legal attendant.

That such damages are to be treated as a substitute for the ship, is a rule often applied in cases of mutual fault, upon a total loss of one of the vessels and her cargo. The vessel that survives is not required to pay the whole loss of the other's cargo in addition to one-half the value of the other vessel lost; but the sum recoverable

by the latter is treated as a fund representing the lost ship, and as such chargeable with half the loss on her own cargo. This is enforced notwithstanding the fact that the statute makes "the interest of the owner in the ship and pending freight" at the close of the voyage, the limit of his liability. For his interest in the ship still remains in the form of a demand against the other vessel for half damages, for which he must account. It is the same with a bottomry bond; for this conveys, in pledge, all the owner's interest in his ship; and under the bond, and under the statute alike, the transfer of his interest in the vessel includes, by necessary implication, the fund recoverable, as the representative of the ship, for her tortious destruction.

I find, therefore, that the bond was a legal lien upon that part of the cargo which arrived in Hamburg, and which was worth more than the amount of the bond. The libelants, having necessarily paid the bottomry loan in full, in order to obtain possession of the cargo, are entitled to be reimbursed so much as upon a proper adjustment was chargeable to the respondent as owner of the ship and freight. The rules of general average being somewhat different in this country from those of England, if the parties are dissatisfied with the adjustment made in London, a reference may be taken to ascertain the proper amount according to our law, there being no evidence that any different law is applicable.

Decree accordingly, with costs.