RALLI et al. v. SOCIETA ANONIMA DI NAVIGAZIONE a VAPORE "G. L. PREMUDA."

(District Court, S. D. New York. March 31, 1915.)

1. SHIPPING ⟨Key⟩197—GENERAL AVERAGE—LIABILITY OF CARGO TO CONTRIBUTE —NEGLIGENCE OF SHIP.

Under the maritime law as recognized and enforced in England, Germany, and the United States, general average is payable by cargo, notwithstanding negligence of the ship which occasioned the peril, if the charter party or bill of lading contains a clause exempting from negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 623; Dec. Dig. ⟨Key⟩197.]

2. COLLISION ⟨Key⟩144—LOSS OF OR INJURY TO CARGO—DAMAGES RECOVERABLE UNDER ENGLISH LAW.

Under the English admiralty law, in case of collision for which both ships were in fault, owners of cargo in one can recover only one-half their damages from each of the colliding vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 296; Dec. Dig. ⟨Key⟩144.]

3. SHIPPING ⟨Key⟩195—GENERAL AVERAGE—RECOVERY BACK OF CONTRIBUTION.

A general average adjustment is not analogous to an account stated, and the fact that a contribution in general average has been paid does not preclude the one paying it from recovering it back, when because of subsequent events equitable considerations require its repayment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 618–621; Dec. Dig. ⟨Key⟩195.]

4. SHIPPING ⟨Key⟩195—GENERAL AVERAGE CONTRIBUTION TO COLLISION DAMAGE—RECOVERY FROM OTHER VESSEL—RIGHT OF CARGO CONTRIBUTOR TO RECOVER BACK.

Under the English law general average contributions are not regarded as a part of the damage recoverable in a suit for collision; and where, in a suit for collision in an English court, both vessels were found in fault, and each recovered half its actual damage from the other, one which had been in part reimbursed for such damage by general average

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contributions from the cargo, although protected from direct liability for its own half of such contributions by an exemption clause against negligence in its bill of lading, from considerations of natural justice, will not be permitted to retain the portion recovered from the other ship, but is liable to the cargo owners therefor.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 618–621; Dec. Dig. ⊂⇒195.]

In Admiralty. Suit by Lucas Eustratio Ralli and Anthony Alexander Vlastro against the Societa Anonima di Navigazione a Vapore "G. L. Premuda." Decree for libelants.

Burlingham, Montgomery & Beecher, of New York City (Roscoe H. Hupper, of New York City, of counsel), for libelants.

Lorenzo Ullo, of New York City, for respondent.

MAYER, District Judge. The controversy here to be determined is both novel and interesting, and counsel agree that there are no cases to be found in the books in which the question under consideration has been presented or discussed.

The facts are undisputed. Libelants are merchants doing business under the name of Ralli Bros. and have an office in Manhattan, New York City, while respondent is an Austrian corporation, with an office at Trieste, Austria, and is the owner of the steamship Aristea, of 2,159 tons net register. On October 28, 1909, respondent chartered the Aristea to Ralli Bros., who loaded the steamer at Karachi, India, with a general cargo destined for London and Hamburg, part of which they owned, and the remainder of which was shipped for the account of others. The charter party, executed at London, contained a clause of exemption from negligence in the following language:

"Strandings and collisions and all losses and damages caused thereby are also excepted, even when occasioned by negligence, default, or error in judgment of the pilot, master, mariners, or other servants of the shipowners. * * *"

It also provided:

"All questions of average to be settled according to the custom of the York-Antwerp rules, 1890, by average adjusters to be mutually agreed by the owners and charterers."

Bills of lading issued in a common form likewise contained a negligence clause identical with that of the charter party. The Aristea proceeded to London, discharged part of her cargo, and had started on her voyage to Hamburg early in March, 1910, when, while passing down the Thames, she collided with the steamship Groningen, and sustained damages which made it necessary for her to, and she did, return to London as a port of refuge.

For the common benefit of the Aristea and her cargo, sacrifices were made and expenses were incurred which, under the stipulations of the charter party and bills of lading, became the subject of general average. Thereafter a general average statement and adjustment was duly prepared by average adjusters at Hamburg, and pursuant thereto Ralli Bros. contributed, in general average, on account of the cargo

of which they were owners, the sum of 10,766.97 marks, and there was contributed in general average by other cargo owners (who have assigned to Ralli Bros. all their rights with respect to the recovery here sought) the sum of 12,672.25 marks. The contribution of the ship and freight was 3,830.88 marks. The general average adjustment did not include any items of damage sustained by the cargo.

Subsequently a suit and cross-suit were brought in England in the Probate, Divorce, and Admiralty Division of the High Court of Justice, between the owners of the Aristea and of the Groningen, to recover damages by reason of the collision. The English court held both vessels to blame, and condemned each to pay half the damages of the other. The damages of the Aristea were fixed at £3,962.17.9, plus interest and costs of £136.14.91. This sum did not include any items of damage to the cargo of the Aristea, nor any contribution in general average either by the Aristea or her cargo. The damages of the Groningen were fixed at £6,877.5.4, and the damages as between the Aristea and the Groningen were adjusted by the settlement of the balance between the halves of the two amounts above mentioned; respondent paying to the owners of the Groningen the difference between half the Aristea's damages and half the Groningen's damages.

The damages thus allowed to the Aristea and her owners, and collected from the Groningen and her owners, included items of damage sustained by the Aristea which had been included in the general average statement and adjustment, and on account of which Ralli Bros. and the other owners of cargo of the Aristea contributed general average as hereinbefore set forth. In the total amount of the items dealt with as damages against the Groningen, there is included an amount corresponding to £924.18.1 of general average character. Respondent's recovery or allowance of half thereof as damages from the Groningen and her owners amounted to £462.9.1, and plus interest and costs of £31.18.3, to a total of £494.7.4.

Upon this state of facts the parties have stipulated that:

"The only issue and question involved is whether the libelants, by virtue of the general average contributions of cargo owners on account of loss and damage sustained by the Aristea, are entitled to recover an amount proportionate to that which was of a general average character, and which was included in the damages collected by the Aristea and her owners from the Groningen."

It should be noted at the outset that certain of the relations and rights of the parties, prior to the commencement of the action at bar, had been settled in accordance with certain principles.

[1] It is immaterial whether the general average adjustment was governed by the law of England (the collision having occurred there), or of Germany (the average adjustment having been made there), or of the United States (this being the forum of the present litigation), for in each jurisdiction general average is payable by cargo, notwithstanding negligence of the ship, if the charter party or bill of lading contains a clause (such as here) exempting from negligence. That proposition was clearly held in The Carron Park, 15 Prob. Div. 203, 207, and later (1900) approved in Milburn v. Jamaica Fruit Importing

& Trading Company of London, 9 Aspinall's Mar. Law Cas. (N. S.) 122. In that case Smith, L. J., said:

"Lord Watson, in Strang, Steel & Co. v. Scott & Co., 61 L. T. Rep. 597, 6 Asp. Mar. Law Cas. 419, 14 App. Cas. 601, sums up the position as follows: He says: 'When a person who would otherwise have been entitled to claim contribution has, by his own fault, occasioned the peril which immediately gave rise to the claim, it would be manifestly unjust to permit him to recover from those whose goods are saved. * * * In any question with them he is a wrongdoer. * * * He cannot be permitted to claim either recompense for services rendered, or indemnity for losses sustained by him, in the endeavor to rescue property which was imperiled by his own tortious act.' The allegation of the plaintiffs, the shipowners, is that, if there had been inserted in the bills of lading an exception as to negligence of the master, which usually is the case, there would then, as between themselves and the cargo owners, have been no negligence or default of the master, for this would have then been excepted. Mr. Carver, for the defendants, on the other hand, asserts that the introduction of such an exception into the bills of lading would have made no difference whatever, for he says that general average is not the creature of contract. In this I agree, for the foundation of a general average claim is ordinarily, not that of contract, but is founded upon a loss which arises in consequence of extraordinary sacrifices made, or expenses incurred, for the preservation of the ship and cargo in the time of peril. and which must be borne proportionately by all who are interested. See, per Lawrence, J., in Birkley v. Presgrave, 1 East, 220, 228. Brett, M. R., in Burton v. English, 49 L. T. Rep. 768, 5 Asp. Mar. Law Cas. 187, 12 Q. B. Div. 218, 221, says that the right to contribution comes 'from the old Rhodian laws, and has become incorporated into the law of England as the law of the ocean. It is not a matter of contract, but in consequence of a common danger, where natural justice requires that all should contribute to indemnify for the loss of property which is sacrificed by one in order that the whole adventure may be saved.' But, although general average is. not the creature of contract, this does not settle the question in the present case, for what the contract of carriage is becomes an important factor when considering, not whether a general average claim for contribution has arisen, but in considering, assuming that such a claim has arisen, whether it can be taken away by the cargo owner showing that, as between him and the shipowner, the latter, to use Lord Watson's words, has been a wrongdoer. To create the shipowner a wrongdoer as regards the cargo owner, there must be the breach of some duty, and if by agreement between the two it has been agreed that it shall be no breach of duty for the master to be guilty of negligence—in other words, that as between the two the negligence of the master shall be always excepted—it cannot be said that it is a breach of duty towards the cargo owner for the master to be guilty of that which the cargo owner and shipowner have agreed shall be no breach of duty at all. This appeal raises the question whether The Carron Park, 63 L. T. Rep. 356, 6 Asp. Mar. Law Cas. 543, 15 P. Div. 203, decided by Sir James Hannen in the year 1890, is good law. * * * This decision of Sir James Hannen has been acted upon in practice in this country ever since it was given, and we are asked now to overrule it. * * * I believe The Carron Park, ubi supra, is in accord with the law of England relating to general average in this country."

Sieveking, in his German Law of Carriage Goods by Sea (London, 1907), pp. 174, 175, says:

"It does not matter whether the peril leading to a general average sacrifice or expense is an act of God, or was caused by the negligence or fault of master; crew, or any other person. The sacrifices or disbursements voluntarily made in order to avert the common danger remain acts voluntarily done for this purpose, and are therefore allowable in general average. But there lies an action against the person having committed the fault, and, if this person be the master or a member of the crew, the owner is liable, on account thereof, to the extent of ship and freight. If, therefore, the owner sues for general

average contribution, his claim will be dismissed on the plea that he or his employés have, through their own fault, caused the danger to arise. But, if the owner has exonerated himself from his liability for faults or errors committed by his servants, these errors or faults are as foreign to him as if the danger had arisen from an act of God. Such a defense, therefore, will be invalidated by setting up the negligence clause, and judgment will be given for the plaintiff. The judgment of the Hanseatic High Court of Appeal, dated October 15, 1904, reversed the decision of the court below; their decision being afterwards confirmed in the Court of the Empire on April 12, 1905. 1905, H. 12 and 86, § 702."

And, finally, in the United States, the same conclusion was announced in The Jason, 225 U. S. 32, 32 Sup. Ct. 560, 56 L. Ed. 969.

[2] The collision, however, having taken place in English waters, the rights of all concerned in respect of damages arising from the collision depend upon the English Law. The rules applicable both to vessel and cargo are stated by Carver in his Carriage by Sea (5th Ed.) at page 922 et seq., as follows:

"704. Where both vessels have been in fault in bringing about the collision, the rule is that the liability of the stranger ship, or those responsible for her management, is for one-half only of the damage occasioned to the goods. * * * And it is now clear that the fact that the collision was in part due to negligence of those in charge of the carrying ship does not stand in the way of a claim by the cargo owners against the other ship in fault. And at common law the right of the cargo owner would be to a full compensation. But by the rules of law administered in the Court of Admiralty, where both vessels are to blame, even though not in equal degrees, the whole loss sustained by their owners is apportioned equally between the two. Each party becomes liable to pay to the other one-half of the damage which he has sustained. And this rule has been extended to the claim of an owner of cargo in one of the vessels. He is allowed to claim for half his loss, and no more, against the other vessel. It is true, as I think, that the owner of the cargo is to be considered a perfectly innocent person, and that, as a plaintiff, he does not stand in the same position as the owner of one of two delinquent ships; and if that were the sole ground upon which the owner of the ship would only recover one-half, it might well be that the owner of the cargo would recover the whole; but this is not exactly the view taken by the admiralty law. It endeavors, whether wisely or not I do not say, to administer more equitable justice, and, where both parties are delinquent, to give a moiety of the loss, or to divide the whole loss, it being impossible to ascertain the proportionate culpability. I apprehend that, carrying out this principle according to its practice, the Court of Admiralty would say: 'You, the innocent owner of a cargo, proceeding against one only of two delinquent ships, shall recover only a moiety of the damage, because we can affix to the vessel proceeded against only a moiety of the blame, and you shall be left, with respect to the other half of your loss, to your remedy against the other vessel, which we hold to be equally delinquent.' It may be true that this principle is not altogether reconcilable with the rules and practice of common law, and much might be said as to the equity of its operation and effect; but still I think that this resolution of the question is not conformable to the case of Hay v. Le Neve, and other cases; and therefore my decree must be that the plaintiffs do recover a moiety of the damage only. The Milan, 31 L. J. Adm. at page 112. By section 25, subsec. 9, of the Judicature Act, 1873, it is provided that, 'in any cause or proceeding for damages arising out of a collision between two ships, if both ships shall be found to have been in fault, the rules hitherto in force in the Court of Admiralty, so far as they have been at variance with the rules in force in the courts of common law, shall prevail.'"

Thus, under the English law applicable to a "both to blame" case, cargo, though innocent of fault, may recover only one-half of its dam-

ages from each of the two colliding vessels, although in the United States the entire damage may be recovered from either vessel. The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993; The Atlas, 93 U. S. 302, 23 L. Ed. 863.

Under our law general average contributions are regarded as part of the damage. The Energia (D. C.) 61 Fed. 222, affirmed 66 Fed. 604, 13 C. C. A. 653; Erie & Western Transportation Co. v. City of Chicago, 178 Fed. 42, 51, 101 C. C. A. 170. But under English law such contributions are not regarded as part of the damage to be recovered from the wrongdoer. This was held by Jeune, J., in The Marpessa, [1891] Prob. Div. 403, and I see nothing in The Minnetonka, [1905] Prob. Div. 206, to the contrary.

Bearing these rules in mind, the situation is that, on account of damage loss and expense sustained by the Aristea because of a collision, the owners of cargo shipped on her were obliged to contribute to her loss. The cargo owners could collect one-half of the physical damage to their cargo from the Groningen, but they could not collect anything from the Aristea because of the "negligence" clause. The Groningen and the Aristea having paid each to the other one-half of the other's damage (by settlement of account), and the Aristea having thus received back from the Groningen part of the loss for which the cargo owners had contributed to some extent, the cargo owners now ask that the Aristea return to them their just proportion.

Primarily, it is well to dispose of two contentions urged against recovery: (a) Because in the settlement of collision damage the balance was against the Aristea, and therefore she was required to pay the Groningen an amount over and above that which the Groningen was called upon to pay her; and (b) because the account between the vessels was settled and closed and cannot now be reopened.

As to (a), it is clear, on principle, that it is of no consequence how the account is settled, or in whose favor the balance stands. If A. owes B. $100, and B. owes A. $25, and, in settlement, A. pays B. $75, it seems elementary that, although A. must pay B., he nevertheless received the equivalent of $25.

[3] (b) There is no question akin to an account stated. The correctness of the general average adjustment, or its constituent items, is not questioned nor attacked. The fact that the general average contribution is paid does not make any difference. A court of admiralty acts as a court of equity (O'Brien v. Miller, 168 U. S. 287, 297, 18 Sup. Ct. 140, 42 L. Ed. 469), and in equity the transaction is not finally closed until complete justice is done.

[4] What, then, it may be asked, is the principle upon which the relevant items of payment may be picked out of the general average contribution, and these sums paid back to libelants?

The suggestion is offered that an analogous principle may be found in the obligation of indemnity arising in cases of marine insurance, where subrogation gives the indemnifying insurer the right to all damages recovered from the wrongdoer; the theory being that subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof. Castellane v. Preston, 11 Q. B. D.

380, 388; Phœnix Ins. Co. v. Erie & Western Transpt. Co., 117 U. S. 312, 321, 6 Sup. Ct. 750, 29 L. Ed. 873.

But, while it is desirable to find anchorage in a definite principle, courts of admiralty, historically and traditionally, have been able to meet new questions with two broad purposes: One, to do that which natural justice dictates; and the other, to develop along lines whereby, as Mr. Coe observes in his admirable handbook (Law and Practice of General Average in the United States, Privately Printed, New York, 1912):

"In the interest of commerce * * * the master should be encouraged to make, at the right time, the sacrifice best for all the interests concerned, and should not be trammeled by considerations of benefit to a particular interest."

(1) To define "natural justice" is to beg the question, for it is the attempt of honorable men to do that which is fair, and what is fair is a question of standards and conduct, about which men may differ. In the text-books and the cases there is much discussion as to whether the right to contribution is founded on natural justice or is to be regarded as in the nature of an implied contract; but the most helpful approach to a question of that character is illustrated by Brett, M. R., in Burton v. English, 49 L. T. Rep. 768, 5 Asp. Mar. Law Cas. 187, 12 Q. B. Div. 218, 221 (quoted in Milburn v. Jamaica, supra), and by Bowen, L. J., in the same case, and by Mr. Justice Gray in Ralli v. Troop, 157 U. S. 386, 394–397, 15 Sup. Ct. 657, 39 L. Ed. 742, as follows:

Bowen, L. J., in Burton v. English:

"In the investigation of legal principles, the question whether they arise by way of implied contract or not often ends by being a mere question of words. General average contribution is a principle which comes down to us from an anterior period in our history, and from the law of commerce and the sea. When, however, it is once established as part of the law, and as a portion of the risks which those who embark their property upon ships are willing to take, you may, if you like, imagine that those who place their property on board a ship on one side, and the shipowner who puts his ship by the quay to receive the cargo on the other side, bind themselves by an implied contract which embodies this principle, just as it may be said that those who contract with reference to a custom impliedly make it a part of the contract. But that way, though legally it may be a sound way, nevertheless is a technical way of looking at it. This claim for average contribution, at all events, is part of the law of the sea, and it certainly arises in consequence of an act done by the captain as agent, not for the shipowner alone, but also of the cargo owner, by which act he jettisons part of the cargo on the implied basis that contribution will be made by the ship and by the other owners of cargo."

Mr. Justice Gray, in Ralli v. Troop:

"There has been much discussion in the books as to whether the right to a general average contribution rests upon natural justice, or upon an implied contract, or upon a rule of the maritime law, known to and binding upon all owners of ships and cargoes. But the difference has been rather as to forms of expression than as to substantial principles or legal results. Mr. Justice Clifford, speaking for this court, stated, in several cases, as the basis of general average, that natural justice requires that where two or more parties are engaged in a common sea risk, and one of them, in a moment of imminent peril, makes a sacrifice to avoid the impending danger, or incurs extraordinary expenses to promote the general safety of the associated interests, the loss or expenses so incurred shall be assessed upon all in proportion to the share of each in the adventure."

So, likewise, it may be pointed out in the case at bar that, by whatever name the principle may be called, fair dealing requires that the Aristea shall return to the cargo owners that which was contributed and for which the Aristea has been reimbursed. If, for instance, the Aristea had first collected half her damages from the Groningen, and then sought to collect the entire amount of the same items by way of general average contribution from the cargo owners, she certainly would not have found any support in the courts upon any theory in the maritime law or in equity.

(2) The morale of the sea demands that the master shall think only of the right thing to do. Johnson v. Chapman, 19 C. B., (N. S.) 563; The Star of Hope, 9 Wall. 203, 19 L. Ed. 638. There may often be cases where the judgment as to fault of collision may be pronounced long after the general average is adjusted, and if masters know that the ship may benefit at the expense of the cargo, it is but human that, from loyalty to their owners and in the excitement of a perilous moment some may act for the benefit of the ship to the detriment of the cargo. "The moral tendency of the well-known commercial usage is to induce the master to exercise an independent judgment in the emergency for the benefit of all concerned." The Star of Hope, 9 Wall. 203, 19 L. Ed. 638. And the result thus hoped for is as important as the just settlement of controversies arising out of a disaster.

The conclusions here arrived at have support in the practice of average adjusters, as testified to by Mr. Brengle, an average adjuster of large experience. While Mr. Brengle's testimony is not binding in this case, it is useful as argument, and as such is of some persuasive value. And, further, as the case is one of first impression, it is unnecessary to speculate how the question might be disposed of in other jurisdictions, although I am unable to find anything in English or German law inconsistent with the view here expressed. Sieveking, supra, page 172 et seq.

As set forth in Exhibit G, the account stands as follows:

Items of general average allowed................................ £462. 9. 1
Add proportion of interest...................................... 31.18. 3

£494. 7. 4

Divided thus:

General average on cargo insured per Ralli Bros..............................Mks. 10,766.97 receives..£195. 3.10
General average on cargo insured by buyers ..............................Mks. 12,672.25 receives.. 229.14. 7

Mks. 23,439.22 receives..£424.18. 5

General average applying to ship and freight ..............................Mks. 3,830.88 receives.. 69. 8.11

Mks. 27,270.10 receives..£494. 7. 4

The ship will, of course, retain £69.8.11, but libelants are entitled to recover the sum of £424.18.5 (with interest), being the apportionment for contribution of cargo in general average.

A decree in accordance herewith may be proposed on two days' notice.