## THE ANDREE.
## THE ALEXANDER.

ARMOUR & CO. et al. v. GREEN STAR S. S. CO., Limited.

### No. 157.

Circuit Court of Appeals, Second Circuit.
March 2, 1931.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar and Leonard J. Matteson, both of New York City, of counsel), for appellants.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellants seek to participate in the distribution of collision damages obtained by the steamship Andree from the steamship Alexander by reason of a collision occurring in the Delaware river near Philadelphia. The Andree, laden with cargo, was sunk by the Alexander on May 22, 1922. A suit was brought against the Alexander, but it was settled by an agreement to pay 90 per cent. of the libelants' provable damages resulting from the collision. An interlocutory decree was entered accordingly.

A dispute arose between certain cargo interests and the vessel owners as to the distribution of the recovery. Appellants filed their petition asking $30,000. The moneys were paid to the master of the Andree upon his filing a stipulation for value in that sum to abide any decree of the court with respect to the sum in dispute. After issue was joined on this petition and a trial had, the facts being stipulated, a decree was entered dismissing the petition. This appeal was then prosecuted.

The appellants' claim to an interest in the collision damages arises because of the loss sustained to their cargo loaded on the Andree while she was at New York City and before proceeding to load more cargo at Philadelphia. Her intended destination was Marseilles, North Africa, and Spanish ports. While the loading was proceeding at New York City, a serious fire occurred. It was extinguished, but sacrifices were made of the vessel and cargo. General average claims resulted. Appellants' cargo suffered water damage in an effort to extinguish the fire. The amount allowed by adjusters to the petitioners for the sacrifice to their cargo amounted to $70,000. The sound value of the Andree was fixed for general average purposes at $193,400. A deduction of $20,485 for fire and water damage was allowed, and, after adding the amount made good to the vessel in connection with the fire general average, gives a contributory value for the purpose of general average existing when sailing from New York of $175,000. The value of the cargo reshipped at New York after the fire was $194,000. If the voyage had been successfully completed, the appellants would have been entitled to a contribution in general average from the shipowners of approximately $27,000.

While thus proceeding to Philadelphia with appellants' lien attaching to the vessel, she came into collision with the Alexander and sunk. Both ship and cargo suffered seriously. The vessel was raised with cargo and taken to Philadelphia, where the voyage was abandoned. The sacrifices and expenditures of a general average nature made in raising the vessel and cargo were much in excess of the value of all the properties saved. An adjustment of these made by an experienced adjuster of general average determined that there was no contributory value of the steamship Andree at Philadelphia, and consequently no allowance was made to the appellants in respect to sacrifices of their cargo in extinguishing the fire in New York.

The owners of the Andree claimed the full value allowed for the Andree as she was before the collision for which payment had been made by the owners of the Alexander. They have refused to grant appellants the right to share in the fund recovered. Below it was held that, since the maritime lien on the vessel, which it was conceded appellants had at the sinking, depended upon the value of the res when the lien came to be foreclosed, and since the res had no value at the conclusion of the voyage, it followed that the lien was also valueless under general average rules which were embodied in the contract of carriage. But appellants' claim to a recovery does not involve a question of general average. They seek to enforce a maritime lien against the funds which had been substituted for the property to which the lien originally attached. They say that, while it is true the lien originally arose out of general average, their rights in the proceeds should not depend on the circumstances out of which their lien arose. The libel against the Alexander by the appellee was for the full amount of the cargo loss and the physical damage to the vessel. The recovery was for 90 per cent. thereof. Thus substantially full restitution

was made to the owners of the Andree for the vessel valued before the collision. In this sum was included the lien of the appellant which attached to the ship. In equity and good conscience this lien should be paid. If the Andree had made the voyage, at the end thereof, it would have had to pay the lien; and, having obtained substantially the full value of the vessel to which the lien attached, may the owners retain that sum without paying the lien? We think not. The recovery obtained has been fixed according to the rule of restitutio in integrum, a rule adopted by the admiralty courts. Standard Oil Co. v. So. Pac. Co., 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890; The Baltimore, 8 Wall. 377, 19 L. Ed. 463; United States v. Boston Sand & Gravel Co., 23 F.(2d) 839 (C. C. A. 1). The call of natural justice or implied contract which admiralty courts do not hesitate to answer (Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742; Ralli v. Societa Anonima, 222 F. 994 [D. C. S. D. N. Y.]; Burton & Co. v. English & Co., 49 L. T. Rep. 768, 5 Asp. Cas. 187, 12 Q. D. 218), dictates that appellee should pay this lien. That appellants had such a lien for their sacrifices is clear. Dupont de Nemours v. Vance, 19 How. 162, 15 L. Ed. 584; Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742; Cutler v. Rae, 7 How. 729, 8 How. 615, Appx. 12 L. Ed. 890; The Dora, 34 F. 343 (D. C. E. D. La.). Such a maritime lien is a jus in re, a property interest in the property affected, adhering to it wherever it may go. The John G. Stevens, 170 U. S. 113, 18 S. Ct. 544, 42 L. Ed. 969; The J. E. Rumbell, 148 U. S. 1, 13 S. Ct. 498, 37 L. Ed. 345; The Kalfarli, 277 F. 391 (C. C. A. 2); The Theodore Roosevelt, 291 F. 453 (D. C. N. D. Ohio). Assuming the lien to have existed at the collision, we need not inquire whether the appellants are entitled to have the damages paid substituted for the property lost in the general average adjustment. For the purpose of these appellants, we need not so hold. In many of the cases there are statements to the effect that damages stand "as a direct product and representative of the ship," but this means that they so stand for the purposes of compensating those injured. A right of action, or recovery thereon, for the value of the owner's interest in a vessel, stands in the same position as, and as a substitute for, the vessel, and maritime lienors, having a proprietory interest in the vessel, have an identical interest in the collision recovery. O'Brien v. Miller, 168 U. S. 287, 18 S. Ct. 140, 42 L. Ed. 469; Sheppard v. Taylor, 5 Pet. 675, 8 L. Ed. 269; In re United States Steel Products Co., 24 F.(2d) 657 (C. C. A. 2).

In Sheppard v. Taylor, supra, a vessel was seized, condemned, and sold by authorities for violation of a trade regulation. After an award was made, and paid to the shipowners' assignees, of a sum of money as restitution for the vessel, it was held that the sum so paid represented the value of the ship and was subject to the lien of the officers and crew for wages just as the vessel had been, and that they could recover the sums due them out of the award. In O'Brien v. Miller, supra, the lien of a cargo owner, who was obliged to pay a sum which would have been due from the ship on a bottomry bond after the ship was sunk in collision, attached to the recovery had from the offending vessel. In Re United States Steel Products Co., supra, this court held that a collision recovery by the government for the loss of a naval vessel, obtained from a merchant vessel, where both vessels were at fault, is subject to the lien of the owner of cargo on the merchant vessel for damages sustained in the collision, and the recovery was held to be a substitute for the lost destroyer and within the jurisdiction of the court. In Appleton v. Crowninshield, 8 Mass. 340, the plaintiff loaned the owner of a vessel a sum of money on bottomry. Thereafter the vessel was seized and taken as a prize by the British Admiralty Court. An appeal was taken and under the Jay Treaty, the decision was reversed and an award made to the defendant of a sum of money in full compensation for the ship and freight with interest from the time of seizure which sum the defendant received. The plaintiff sued on the bond and later for money had and received when it was eventually held for the plaintiff. The treaty provided for compensation to those who suffered from unjust captures by the British, and but for the capture the plaintiff would have recovered on his bond and the capture of the British destroyed his security. The award then, though nominally for the defendant alone, was meant to compensate the plaintiff also. In The Empusa, 5 Prob. Div. 6, the master of a vessel borrowed money at Philadelphia on a bottomry bond secured by the ship's freight. The vessel was sunk through the fault of the Empusa and limitation proceedings resulted in the payment into court of various sums, one of which was apportioned to the freight loss. The question was whether the lender of the money was entitled to a portion of the fund. The

court held that it was, and that it should receive that proportion of the sum loaned on the bond that the damages paid for the loss of freight bore to the freight.

Below the court held that the petitioners were not entitled to have the damages substituted for the property loss in a general average adjustment. We need not consider that question here. The appellants are entitled to compensation for the loss of their general average lien. They have lost a valuable right through the sole fault of the Alexander. The court below pointed out that a general average contribution based on the damages recovered as part of the actual values of the property would permit the appellants to better their position at the other party's expense. It is equally true, however, that the appellee has been permitted to better its position, not only to the appellants' disadvantage, but to their exclusion.

Between the cases on bottomry bonds referred to, and general average liens, there are two distinctions. The first, suggested in the opinion below, is that a reduction in the value of the ship and cargo will diminish both the fund against which a general average lien must proceed, and the amount of the claim, whereas in bottomry bonds the claim will remain the same although the fund is equally diminished. The second is that a bottomry bond holder has an interest in the property bottomed, for the amount the bond reduces the owner's insured interest pro tanto. This circumstance is apparently relied on in the cases giving such bondholders a share in the proceeds of the ship, for they are referred to as authoritative in so holding. Whether the law relating to general average is the same, we need not decide, but it would seem that it should be, for, so far as property is subject to such a lien, it is not at its owner's risk. In The Empusa, supra, it was not held that the lien of the bond attached to the proceeds of the property bottomed, for that would give the bond payment in full, but that the bondholder should receive that proportion of the amount of its bond that the damages recovered bore to the value of the property bottomed. While the opinion in the case is short, it has met with approval by the text-writers. Abbott, Merchant Ships and Seamen (14th Ed.) p. 213; MacLachlen, Merchant Shipping (6th Ed.) p. 48; Marsden, Collisions at Sea (8th Ed.) p. 189. The principle of O'Brien v. Miller and Appleton v. Crowninshield is the same.

■ But it is argued that, by appellants' agreeing in the contract of affreightment "that general average is to be adjusted according to the York-Antwerp rules," rule 17, which reads, "The contribution to a general average shall be made upon the actual values of the property at the termination of the adventure, to which shall be added the amount made good as general average for property sacrificed; * * * *" in some way changes the foregoing liability which we have imposed. The argument is that appellants' rights against the Andree terminated in the event she became physically or totally a loss. But this is answered by the principle of the bottomry bond cases. What was said by Judge Brown in Miller v. O'Brien (D. C.) 59 F. 621, 623, is pertinent. "It now appears that the respondent has recovered upwards of $30,000 for the loss of the Andrew Johnson, through the negligence of the Thirlmere. These proceeds in the respondent's hands stand as the direct product and representative of the ship; so that the Andrew Johnson, even if the words 'the said vessel' be held to refer to her only, has not become an 'utter loss' within the condition of the bond, or within the presumed intention of the parties."

Because of the collision damages awarded, the Andree has not been lost, and the sum paid as a recovery for collision damages is the res to which the lien arising by reason of the sacrifices made in New York attaches. It is a res which existed at the termination of the adventure. The appellants had every reason to expect protection of their maritime lien, and they were defeated only by the faults of the Alexander. They should receive compensation for the loss of their lien.

The rule of The Empusa, supra, gives appellants that portion of the value of their lien that the damages recovered bore to the value of the property loss; that is, 90 per cent. The amount of the lien is not difficult of ascertainment, since 90 per cent. of the value of the property lost was recovered. The value of the property at the time of the collision is ten-ninths of the amount of the damages. Taking ten-ninths of the amount of the damages as the value of the property contributing, and the value of the property sacrificed as the amount of the general average loss, we obtain a fair estimate of the value of the lien at the time of the collision; 90 per cent. of this amount is what the appellants should recover.

Decree reversed.